The counsel for the defendant have urged: first, that the complainants' entry is so vague that no subsequent enterer could tell at which of the forks the land was intended to be appropriated.
Kendrick has not called this creek by any name in his entry. Indeed, whether, at the time the entry was made, it had a name by which it could be distinguished *Page 235 
is not satisfactorily proven; nor is it material, as Kendrick has relied entirely upon description to ascertain, not only the stream, but the part of it on which he intended to appropriate land. The question is, whether he has so described it that any person seeing the entry and acquainted with the country could, by reasonable industry, have found the place designed to be appropriated.
Taking it for granted that Greene's land on Duck River was notorious, — and so the parties seem to consider it. — we have a point from which to commence our examination: "The second creek emptying in on the south side" is the one on which the entry says the land shall lie. A man on this stream, in search of the west fork, would most probably commence his examination at the mouth, particularly as the calls in the entry would naturally lead him there. Suppose him to proceed up the creek until he became acquainted with the different divisions of it, which fork would he, as a reasonable man, fix on as the one designed by the entry? It seems clear to me that he would fix on the one claimed by the complainants.
Silver Creek, Hurricane Creek, and Brush Creek are all small streams, — they may, in fact, almost be considered as branches; but when we come to the place where each of the uniting streams bear a considerable proportion to each other, that would be considered as the fork intended by the entry. If there are various forks, one large and another small, and the fork is called for, without distinguishing which, we would naturally conclude the main or principal one was that intended, and the one most likely to attract attention. Upon the same principle, if there be several west forks to this stream, one large and others small, I would suppose the locator, if he called for the west fork, meant the largest. Indeed it appears to me, as it does to the counsel of the complainants, that these small streams can no more be considered forks than the small limbs on a tree, or small paths making into a highway. If, then, we have thus ascertained the fork upon which the land is situated, *Page 236 
we can have no difficulty in fixing the beginning point. As he calls to begin near the fork, without any other description of his beginning point, he ought to begin at the fork.
I have no doubt but that Kendrick's land lies at the place he claims; and it seems to me that his land is so described in his entry that any man, acquainted with the objects called for, could, with reasonable industry, find the spot fixed on for his beginning.
These points being thus ascertained, it is insisted for the complainants that they have a right to direct the surveyor to run in an oblong up the west fork; while, on the other side, it is said that the surveyor has a right to survey in a square, if he chooses.
I am of opinion that a citizen who wishes to acquire a title to land, has a right to direct the surveyor whether his land shall be surveyed in a square or oblong. But still the question recurs, at what time and in what manner is this direction to be given? As I believe, when the entry is made, and by the description he gives of his land in the entry itself.
By the Acts of 1777, ch, 1, section 10, and 1784, ch. 14, section 7, the surveyors are directed to survey the lands entered, and, as near as may be according to the calls of the entry, in a in a square or oblong. I am impressed with the belief that, in making the survey, the surveyor is to be governed by the directions in the entry itself. If the individual wished his land run in an oblong, he ought to have used such expressions in his entry as would manifest that wish. He ought either to have said so expressly or called for objects so distant from each other as would compel an oblong for the sake of including those objects. It seems to me that the Legislature intended to prohibit the surveyor from running the survey more than twice as long as wide, even if the calls in the entry should require it, unless there was some necessity for doing so, by natural boundaries or prior claims interfering. If the party does not, on the face of his entry, show that he intended to have his land surveyed in an oblong, he can not compel the surveyor, by any after directions, so to survey it; the surveyor has *Page 237 
his election to survey in a square or oblong. And if, from the words of the entry, the surveyor is left at liberty to run in a square or oblong, as he may choose, and he does elect to run in an oblong, and thereby an interference with a younger entry is produced, I am not prepared to say that the younger enterer is to be injured by such interference, — that is a question which I shall not decide at this time.
By examining the Acts of 1777, ch. 1, section 5; 1779, ch. 6, section 6; 1783, ch. 2, section 11; 1784, ch. 15, section 3; 1785, ch. 10, section 1; 1786, ch. 20, sections 1 and 7, and 1787, ch. 23, section 1, it seems to me it will clearly be discovered that the Legislature intended the enterer of land should, upon the face of the entry, give such a description of the land as would enable the surveyor and all subsequent enterers, with reasonable exertions, to ascertain where it lay, so that the surveyor might be enabled to survey it, and subsequent enterers know how to avoid it in making their entries. After an entry is thus made, the individual who makes it is not to have any interference in causing his grant to be obtained, or in directing how the land shall be surveyed; except in the case pointed out in the Act of 1778, ch. 3, section 7, where the surveyor is ordered to run dividing lines, according to the agreement of the parties. And the Legislature, by compelling the surveyor to survey according to the directions of the claimants in this particular case, has intimated pretty strongly that it did not intend he should be so regulated in cases of any other description.
The enterer in this case, not having shown by his entry that he intended his land should be run in an oblong, had no right, at any subsequent period, to direct the surveyor on that point; and if, by surveying in a square, an interference with the defendant would have been avoided, I should think the bill ought to be dismissed. But that, it seems, would not be the case, as there would still be an interference of nearly five hundred acres. I am of opinion that we ought not to dismiss the bill; because, first, this is a case that *Page 238 
would have been perplexed and doubtful at law, and therefore the complainants had a right to come into this Court to have their case finally settled. 2 Com. Dig. 481, 483, 489, 491; 2 Ves. Jr. 463; 1 Ves. Jr. 424. And, secondly, the entry itself vests an equitable right to this land; and upon general principles, I believe the complainants may resort to this Court for relief, and that we can retain the cause. Let the complainants have their survey made and obtain a grant, and when this is done, we can perpetually enjoin Dallum from taking possession of that part which, from the complainants' entry, they have a right to hold.
ORIGNAL NOTE. — Kendrick's entry was afterwards surveyed in an oblong; in pursuance of which a grant issued. An amended bill was filed by the complainants, setting forth these facts; and upon the final hearing of the cause, a decree was pronounced in their favor for all the interference with Dallum, produced by that mode of surveying. — REP.